**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALEXIS ANDREASIK, an individual, | ) |
| | ) |
| Plaintiff, | ) Case No. |
| | ) |
| vs. | ) |
| | ) |
| | ) Judge |
| HUNT, GATHER LLC and | ) |
| Lynna Bartosh individually, | ) |
| | ) |
| Defendants. | ) |
| | ) |

**COMPLAINT**

NOW COMES Plaintiff, Alexis Andreasik, by and through her attorneys Case + Sedey, LLC, to bring this Complaint against Defendants Hunt, Gather, LLC ("HG" or the "Company") and Lynna Bartosh ("Bartosh"), as set forth below.

**NATURE OF ACTION**

1. This claim stems from an extraordinarily hostile and retaliatory working environment that gave rise to claims for gender and disability discrimination and retaliation under both federal and state law as well as common law claims for retaliatory discharge, the intentional infliction of emotional distress and a state statutory claim for unpaid wages.

**PARTIES**

2. Plaintiff, Alexis Andreasik, is a resident of Cook, County Illinois. At all relevant times, she was an Illinois employee.

3. Defendant Hunt, Gather is a Texas Limited Liability Company residing in Austin Texas. At all relevant times they employed Plaintiff from her home office in Chicago, Illinois.

**JURISDICTION AND VENUE**

4. Jurisdiction is conferred on this Court by the federal statutes at issue in this case as well as by 28 U.S.C. § 1331. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. § 1391 (b) and (c).

5. At all relevant times Plaintiff worked from her home office in Chicago and was an "employee" entitled to the protections of the Illinois Human Rights Act, the Illinois Wage Payment and Collection Act, Title VII of the Civil Rights Act and the Americans with Disabilities Act.

6. At all relevant times, Defendant HG was an "employer" as defined by the Illinois Human Rights Act, Title VII of the Civil Rights Act and the Americans with Disabilities Act.

7. Defendants HG and Bartosh were employers as defined by the Illinois Wage Payment and Collection Act.

## FACTS COMMON TO ALL ALLEGATIONS

8. Plaintiff was hired to work for Defendant Hunt, Gather on August 2, 2021, as the Vice President of Account Services.

9. There are three partners at HG: Lynna Bartosh, Jason Burks ("Burks") and Katherine Horn ("Horn"). Bartosh and Burks are (or were) married to each other.

10. Plaintiff spent the first two weeks of her employment at the Company's headquarters in Austin, Texas. During those two weeks, she learned several concerning things, including that Burks and Bartosh were going through a divorce and the third partner, Horn, had abruptly moved to Seattle because of the toxic work environment in Austin. Plaintiff also discovered that leadership was unaware of operating margins, P&L health and did not have any financial processes in place.

11. Moreover, in the months that followed her hire, women on Plaintiff's team regularly confided in her about mistreatment, harassment, verbal abuse and bullying by Bartosh. These employees reported that Bartosh has had a "queen bee" complex, wherein she was

threatened by other women, and as a result, was demeaning and oppressive toward them. As time went on, Plaintiff observed this to be true. Bartosh did not similarly treat male employees in the same hostile manner.

12. Bartosh's hostility toward some of the company's female employees was so severe that several ultimately resigned. Moreover, some that resigned reported having had to seek counseling afterward due to the toxic environment.

13. Plaintiff was extremely concerned by what she learned and witnessed of the hostile environment. She tried raising concerns with Bartosh many times. Each time, Bartosh refused to take responsibility and, instead, would say the employees "deserved it."

14. Plaintiff also tried to speak with Horn, who was acting as the de facto head of human resources for the company, about the discriminatory and hostile treatment. Horn acknowledged Bartosh's behavior but repeatedly said there was nothing she could do about it.

15. By November 2021, Plaintiff was regularly calling Horn for advice on how to handle Bartosh and her hostile treatment of female team members and herself. The more Plaintiff tried to defend and support her team, the more hostile Bartosh became toward Plaintiff.

16. As Bartosh's hostility toward Plaintiff increased, Plaintiff began experiencing extreme stress. In or around November or December 2021 Plaintiff told Horn that her Rheumatoid Arthritis (RA) had flared as a result of the stress. Prior to this, Plaintiff's RA had been in remission for several years. Despite knowing this, Horn still refused to take any action to remedy the harassment.

17. Meanwhile, throughout 2022, two of Plaintiff's female direct reports were frequently complaining to Plaintiff about Bartosh's hostile, intimidating and aggressive behavior toward them. Again, Bartosh was not treating male employees like this. Plaintiff continually tried

to object to Bartosh's hostile treatment of her and her female employees, but Bartosh would not stop, and the other two partners would do nothing to remedy the hostile environment.

**Plaintiff discovers fraudulent billing practices, reports them and faces retaliation.**

18. Despite her physical pain and mental turmoil, Plaintiff continued working diligently for HG. One aspect of Plaintiff's job involved managing HG's financials and overall operating health of client accounts. Prior to Plaintiff's hire, HG did not have any accounting or financial policies or procedures in place, so Plaintiff worked to develop those.

19. Bartosh became agitated with Plaintiff's efforts to develop appropriate processes, so Plaintiff worked with Horn to do so. This also agitated Bartosh and at first Plaintiff could not figure out why.

20. However, as Plaintiff dug deeper into the Firm's accounting and client billing, she came to reasonably believe that Bartosh and HG were engaging in negligent and/or fraudulent billing practices. For instance, she discovered things like inflated billings, double billings and use of client funds without permission. Plaintiff also discovered that Bartosh often increased billings to what she "thought" a task should have taken instead of the lesser time it had actually taken. Plaintiff also learned that Bartosh had instructed employees to inflate their billings. Plaintiff raised concerns about these financial improprieties with the partners. Horn encouraged her to fix the issues while Bartosh would become defensive and try to block her from doing so.

21. Then, in or around July 2022, Plaintiff presented the newly created financial processes and procedures to the three partners. This work included an automated tracking process to track financials, including how employee hours contributed to profit margin. She also presented accurate profit and loss projections. Horn praised Plaintiff for overhauling the entire operating process. Bartosh, however, remained obstinate and in or around November 2022

Bartosh removed Plaintiff's financial management responsibilities. In December she also removed Plaintiff's Business and Account Leadership responsibilities.

22. After this, Plaintiff told Horn that Bartosh had revoked her financial responsibilities and that she was concerned that this meant there would be no oversight for Bartosh's fraudulent practices. Horn told her she understood but that she did not believe there was anything she could do about it.

**Plaintiff's health suffers and Bartosh increases her harassment of her.**

23. By January 2022, Plaintiff's RA had worsened to the point that it was difficult for her to perform everyday functions, such as getting dressed and/or using her hands. She also was getting regular bloody noses.

24. When Plaintiff was initially hired, she told the partners she would consider relocating to Austin in early 2022. At the end of 2021, however, Plaintiff told Horn that because of her RA flaring, that she could not move as early as planned.

25. On April 21, 2022, Plaintiff sent an email to the partners confirming that she could not move to Austin at that time because of her health. In response, the partners never asked if Plaintiff needed an accommodation. Instead, Burks texted Plaintiff a "diet" he believed she should try to resolve her condition.

26. After Plaintiff said she could not move as originally planned because of her health, Bartosh began blaming Plaintiff for problems, saying things like, "this would not be a problem if you moved here."

27. By late May or early June 2022, Bartosh's bullying and abuse toward Plaintiff and other women was so bad that Horn and Plaintiff began strategizing about how to raise employee concerns. Horn and Plaintiff decided to conduct employee surveys on an anonymous platform. When asked to complete the survey, employees reported being "terrified" to give feedback, and

repeatedly asked if they would be identified. Most, it not all, cited fear of retaliation being among their chief concerns.

28. On June 12, 2022, Plaintiff and the partners went to a leadership retreat in Cabo, Mexico where the employee surveys were reviewed with the leaders. Rather than take the survey results seriously, Bartosh lashed out at the entire group. She refused to talk to Plaintiff for the rest of the trip and when they returned to Austin, the retaliation and harassment worsened, resulting in another female member of Plaintiff's team resigning.

29. Despite all of this, in early October 2022, Plaintiff closed the largest first-year business account ever for the Company.

30. On November 10, 2022, Plaintiff had her annual review with the three partners. She received high praise, a raise and a new bonus structure. During that review, Burks noted that the partners knew that Plaintiff could not move because of her RA. Horn and Burks seemed supportive of her continuing to work in Illinois but Bartosh said nothing. After that, Bartosh further retaliated against Plaintiff and removed more of her responsibilities.

31. For instance, just a couple of weeks later, in late November, Bartosh hired a male freelance employee to work on the team and then gave that employee many of Plaintiff's responsibilities. Moreover, Bartosh excluded Plaintiff from meetings and discussions and, instead, included the new male employee.

32. A couple weeks later, in December 2022, Bartosh removed Plaintiff's account management responsibilities and told her to shift her focus to strategy and sales. Bartosh told at least one of Plaintiff's colleagues that she took this action and was unhappy with Plaintiff because Plaintiff could not move to Austin. She also told Plaintiff's colleague about Plaintiff's medical condition.

33. Then, in or around January 2023, Plaintiff was in Austin for meetings. Plaintiff had previously asked Bartosh if she could limit early morning meetings because her RA symptoms are the worst upon waking. While Plaintiff was in Austin, Bartosh went out of her way to schedule early morning meetings before the office was even open. Plaintiff's RA symptoms on that trip were so severe that Horn had to help zip and carry Plaintiff's luggage.

34. By February 2023, Plaintiff's doctors placed her back on Orencia, an injectable immunosuppressant, in conjunction with steroids. The side effects of this medication combination are similar to chemotherapy. Plaintiff told Bartosh and Horn about this medication regimen and the expected side effects.

35. Less than a month later, on March 22, 2023, Bartosh terminated Plaintiff claiming only that she was not a "culture fit." Bartosh replaced Plaintiff with the male freelance employee she had previously hired who was far less experienced and tenured than Plaintiff.

36. At the time of her termination Plaintiff had eleven accrued but unused vacation days. To date, Defendants have refused to pay Plaintiff for these days.

37. On May 2, 2023, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights which was cross-filed with the Equal Employment Opportunity Commission. Plaintiff plans to opt out of the IDHR's investigation and will supplement her complaint with the right to sue letter once she receives it.

## COUNT I
## GENDER DISCRIMINATION IN VIOLATION OF
## THE ILLINOIS HUMAN RIGHTS ACT

38. Plaintiff incorporates paragraphs 1-37 as though set forth herein.

39. Bartosh subjected Plaintiff and other female employees to a severe and pervasive harassment and hostile working environment based on their gender.

40. Bartosh did not harass male employees or treat them in a hostile manner.

41. This harassment and hostile environment culminated in Plaintiff's termination, after which she was replaced by a less qualified male employee.

42. As a result, Plaintiff suffered lost wages and benefits and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits as well as compensatory damages and attorneys' fees incurred in bringing this action.

### GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

43. Plaintiff incorporates paragraphs 1-37 as though set forth herein.

44. Bartosh subjected Plaintiff and other female employees to a severe and pervasive harassment and hostile working environment based on their gender.

45. Bartosh did not harass male employees or treat them in a hostile manner.

46. This harassment and hostile environment culminated in Plaintiff's termination, after which she was replaced by a less qualified male employee.

47. As a result, Plaintiff suffered lost wages and benefits and emotional distress.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits as well as compensatory and punitive damages and attorneys' fees incurred in bringing this action.

### COUNT III
### RETALIATION IN VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT

48. Plaintiff incorporates paragraphs 1-37 as though set forth herein.

49. Plaintiff repeatedly complained about and objected to Bartosh's hostile gender-based treatment of her and other female employees.

50. As a result of these objections and complaints, Bartosh retaliated against Plaintiff by further harassing her, removing her responsibilities and ultimately terminating her.

51. As a result of this retaliation, Plaintiff suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits as well as compensatory damages and attorneys' fees incurred in bringing this Action.

## COUNT IV
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE ILLINOIS HUMAN RIGHTS ACT

52. Plaintiff incorporates paragraphs 1-37 as though set forth herein.

53. Plaintiff's Rheumatoid Arthritis substantially limited her in several life activities such as using her hands and caring for herself.

54. Defendant HG discriminated against Plaintiff because of her disability when Bartosh removed her responsibilities and then terminated her, replacing her with a less qualified non-disabled employee.

55. As a result, Plaintiff suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits as well as compensatory damages and attorneys' fees incurred in bringing this Action.

## COUNT V
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

56. Plaintiff incorporates paragraph 1-37 as though set forth herein.

57. Plaintiff's Rheumatoid Arthritis substantially limited her in several life activities such as using her hands and caring for herself.

58. Defendant HG discriminated against Plaintiff because of her disability when Bartosh removed her responsibilities and then terminated her, replacing her with a less qualified non-disabled employee.

59. As a result, Plaintiff suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits as well as compensatory damages and attorneys' fees incurred in bringing this Action.

## COUNT VI
## RETALIATORY DISCHARGE

60. Plaintiff incorporates paragraphs 1-37 as though set forth herein.

61. Plaintiff repeatedly complained about what she reasonably believed to be fraudulent and illegal billing practices which amounted to theft from HG's customers.

62. Defendant terminated Plaintiff because of these complaints.

63. As a result, Plaintiff has suffered lost wages and benefits as well as emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits as well as compensatory and punitive damages.

## COUNT VII
## VIOLATION OF ILLINOIS WHISTLEBLOWER ACT

64. Plaintiff incorporates paragraph 1-37 as though set forth herein.

65. Plaintiff repeatedly refused to engage in unlawful conduct when she objected to and created processes to eliminate Defendant's negligent and fraudulent billing practices.

66. Defendant HG terminated Plaintiff because of her refusal.

67. As a result, Plaintiff suffered lost wages and benefits and emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits as well as compensatory and punitive damages and attorneys' fees.

## COUNT VIII
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

68. Plaintiff incorporates paragraphs 1-37 as though set forth herein.

69. Defendants HG and Bartosh subjected Plaintiff to extreme and outrageous conduct when, despite knowing of her serious health condition, Bartosh frequently screamed at, demeaned, intimidated, ridiculed and retaliated against Plaintiff.

70. Moreover, Bartosh continued this conduct and ultimately terminated Plaintiff without cause, even after Plaintiff told her that the hostile working environment was causing her extreme stress which was severely impacting her health.

71. As a result, Plaintiff suffered lost wages and benefits as well as severe emotional distress damages.

WHEREFORE, Plaintiff respectfully requests that this Court award her lost wages and benefits as well as compensatory and punitive damages and attorneys' fees.

Dated: May 2, 2023                                   Respectfully submitted,


                                                     By: */s/ Kristin M. Case*
                                                         Counsel for Plaintiff
                                                         ALEXIS ANDREASIK

Kristin M. Case
**CASE + SEDEY, LLC**
250 S Wacker Dr., Suite 230
Chicago, IL 60606
Telephone: 312.920.0400
Email: kcase@caseandsedey.com