UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALEXIS ANDREASIK, | ) |
|     Plaintiff, | ) Case No. 23-cv-02755 |
| v. | ) Judge Sharon Johnson Coleman |
| HUNT, GATHER LLC and LYNNA BARTOSH, Individually, | ) |
|     Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alexis Andreasik brings a ten-count Amended Complaint [14] against Defendants Hunt, Gather LLC ("HG") and Lynna Bartosh (collectively, "Defendants"). Andreasik alleges:

    I.    Gender discrimination in violation of the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101, against Defendants
    II.    Gender discrimination in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, against Defendants
    III.    Retaliation in violation of the IHRA against Defendants
    IV.    Retaliation in violation of Title VII against Defendants
    V.    Disability discrimination in violation of the IHRA against HG
    VI.    Disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), against HG
    VII.    Retaliation in violation of the ADA against HG
    VIII.    Illinois common law retaliatory discharge against HG
    IX.    Violation of the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/20, against HG
    X.    Intentional infliction of emotional distress ("IIED") against Defendants

Before the Court is Defendants' Motion to Dismiss [20] all counts under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Defendants' motion:

**BACKGROUND**

The following facts are accepted as true for the purposes of Defendants' motion to dismiss. HG is a Texas limited liability company. The nature of HG's business is unclear from the complaint. HG has three partners, including Jason Burks, Katherine Horn, and Defendant Lynna Bartosh. Although HG apparently has other employees, it is unclear from the complaint exactly

1

how many employees HG has. Andreasik was hired as HG's Vice President of Account Services on August 2, 2021.

1. **Initial Experience at HG**

At the beginning of her employment with HG, Andreasik spent two weeks at HG's Austin, Texas headquarters. There, she learned that Horn allegedly moved to Seattle to escape a toxic work environment in Austin. She also learned about alleged financial issues within HG of which the leadership was unaware.

Soon after Andreasik's orientation, other women on Andreasik's team told her about Bartosh mistreating, harassing, verbally abusing, and bullying them. They allegedly told Andreasik that Bartosh had a "queen bee complex," which Andreasik describes as Bartosh being "threatened by other women, and as a result, [] demean[ing] and oppress[ing] [] them." (Dkt. 14 at ¶ 11.) Andreasik soon formed the same opinion of Bartosh. She further alleges that Bartosh was not treating men with the same hostility, that some of the women ultimately resigned due to Bartosh's treatment, and that some women had to seek counseling because of their work environment.

Andreasik claims that she raised her concerns about the women's treatment with Bartosh and Horn. According to Andreasik, Bartosh responded with increased hostility toward her, and Horn acknowledged the issues but refused to take any action to remedy them. Around November or December 2021, Andreasik told Horn that, due to work stress, her rheumatoid arthritis flared up after several years in remission.

2. **Planned Relocation to Austin**

By the beginning of 2022, Andreasik's arthritis had worsened to the point that she had difficulty performing everyday functions. When she was hired, Andreasik told the HG partners that she would consider relocating to Austin. She anticipated being able to relocate by early 2022. But by the end of 2021, Andreasik told Horn she could not move as early as expected. On April 21,

2

2022, Andreasik emailed the HG partners explaining that she could not move to Austin due to her health. Andreasik alleges that the partners did not ask whether she needed an accommodation, that Burks suggested she try a special diet to fix her condition, and that Bartosh began attributing company problems to Andreasik's working outside of Austin.

Throughout the rest of 2022, Andreasik alleges that Bartosh's "bullying and abuse" toward her and other women got worse, including that women were afraid of retaliation and refused to fill out employee feedback forms that Andreasik created. Andreasik alleges that, after Bartosh reviewed the completed feedback forms, Bartosh lashed out at the leadership group and refused to talk to Andreasik. Nonetheless, Andreasik claims that she was performing well. She closed the largest first-year business account in company history in October 2022, and received positive reviews and a raise during her annual partner evaluation in November 2022.

Later in November, however, Bartosh allegedly hired a male freelance employee to join the team and take over many of Andreasik's responsibilities. Over the next few months, Andreasik alleges, Bartosh changed Andreasik's job responsibilities. She also scheduled frequent early morning meetings, even though Andreasik asked Bartosh if she could limit early meetings because her arthritis symptoms were worst in the morning. In February 2023, Andreasik's doctors prescribed her an immunosuppressant for her arthritis, which Andreasik alleges had strong negative side effects. Andreasik told Bartosh and Horn about this medication and its side effects.

3. **Investigation of Fraudulent Billing**

Andreasik managed HG's finances in her role as Vice President of Account Services. Andreasik alleges that HG did not have any accounting or financial policies in place, and that Bartosh became agitated when Andreasik worked with Horn to develop such policies. Andreasik dug deeper into HG's accounting and believed that Bartosh and HG "were engaging in negligent and/or fraudulent billing" by inflating billings, double-billing, and using client funds without

3

permission. (Dkt. 14 at ¶ 20.) Bartosh allegedly instructed employees to inflate their billings as well. Andreasik alleges that she raised the issues with HG's partners. Horn encouraged Andreasik to fix the issues but Bartosh allegedly blocked Andreasik from doing so.

Andreasik presented the partners with new proposed financial policies around July 2022. Although Horn praised Andreasik, Bartosh ultimately removed Andreasik's financial management responsibilities around November 2022 and Andreasik's Business and Account Leadership responsibilities around December 2022. Andreasik reported her concern over the allegedly fraudulent practices to Horn, but Horn said there was nothing she could do about it. Andreasik does not allege whether she reported her suspicions to any law enforcement.

### 4. Termination and Aftermath

On March 22, 2023, Bartosh terminated Andreasik's employment and replaced Andreasik with the male freelance employee who had taken over many of Andreasik's duties. Andreasik alleges that she still has not received payment for her 11 unused vacation days. On May 2, 2023, Andreasik filed discrimination charges with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). Andreasik filed this lawsuit on May 2, 2023, after negotiations between her counsel and HG's counsel failed. Andreasik had requested her right-to-sue letters at the time of filing her complaint with this Court. She has since attached those letters to her brief responding to Defendants' motion to dismiss.

HG has filed a complaint and motion for a temporary restraining order against Andreasik in Texas state court. Andreasik alleges that the Texas case is baseless, and that Horn told an unnamed colleague that HG "had to do something about" Andreasik's lawsuit but would drop the Texas case if Andreasik withdrew hers. (*Id.* ¶¶ 43–44.) Andreasik also alleges that HG prematurely terminated her health insurance coverage after she filed her discrimination claims.

4

**LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim tests the sufficiency of the complaint, not its merits. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). When considering dismissal of a complaint, the Court accepts well pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L. Ed. 2d 1081 (2007) (per curiam); *Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019). To survive a motion to dismiss, plaintiff must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). A complaint is facially plausible when the plaintiff alleges "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

**DISCUSSION**

**1. Statutory Discrimination and Retaliation (Counts I–VII)**

Defendants initially moved to dismiss Andreasik's statutory discrimination and retaliation claims (Counts I–VII) because Andreasik failed to allege she had exhausted her administrative remedies by receiving right-to-sue letters. After Andreasik attached her right-to-sue letters to her response brief, however, Defendants withdrew their motion to dismiss Andreasik's claims on this basis. But as this Court recently held in an analogous scenario, "[a plaintiff] may not amend his complaint through his response brief." *Malkowski v. Miles*, No. 22-CV-06830, 2024 WL 665940, at *2 (N.D. Ill. Feb. 16, 2024) (citing *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011). "Attaching a right-to-sue letter to a response brief [] may cure the deficiency identified in [a plaintiff's] *case*, but it does not cure the deficiency identified in [a plaintiff's] *complaint*." *Id.* (citing *Perkins v. Silverstein*, 949 F.2d 463, 471 (7th Cir. 1991)).

Like the plaintiff in *Malkowski*, Andreasik does not cite any authority suggesting that she may cure the deficiency in her complaint by attaching a right-to-sue letter to her response brief, and other courts in this district have ruled otherwise. *See Mahran v. Cnty. of Cook*, No. 21-CV-6325, 2022 WL 11169418, at *3 (N.D. Ill. Oct. 19, 2022) (Rowland, J.) (dismissing complaint where plaintiff failed to attach right-to-sue letter and included it only through plaintiff's response brief). The Court therefore dismisses Counts I–VII against HG without prejudice, and grants Andreasik leave to amend to allege her receipt of right-to-sue letters, and to attach such letters. As explained below, the Court dismisses Counts I–IX against Bartosh with prejudice for different reasons.

2. **Individual Claims Against Bartosh (Counts I–IV)**

Defendants interpret Andreasik's complaint as alleging that Bartosh was individually liable for discrimination and retaliation in violation of Title VII and the IHRA (Counts I–IV). Andreasik responds that she did not intend to allege Counts I–IV against Bartosh. In any case, Defendants are correct that Title VII and the IHRA generally do not support individual liability. *See, e.g., Stallworth v. Loyola Univ. Chicago*, No. 14 C 7084, 2016 WL 3671426, at *3 (N.D. Ill. July 11, 2016) (Zagel, J.) (agreeing with the defendants' argument that "the ADA, Title VII, and the IHRA do not provide for individual liability" and dismissing such claims against individual defendants) (citations omitted). Andreasik clarifies that she "has asserted individual claims against Bartosh only for the Intentional Infliction of Emotional Distress." (Dkt. 23 at 6.) The Court therefore dismisses all claims against Bartosh with prejudice, except for Andreasik's IIED claim, which the Court addresses below.

3. **Illinois Whistleblower Act (Count IX)**

It is not clear from the complaint which section of the IWA, 740 ILCS 174/1 *et seq.*, Defendants are alleged to have violated. Defendants address Sections 15 and 20 in their motion to dismiss, yet Andreasik only addresses Section 20 in her response brief. Thus, the Court addresses only Section 20 here. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to

respond to an argument . . . results in waiver," and "silence leaves us to conclude" a concession). To the extent Andreasik's claim includes Section 15, the Court agrees with Defendants and dismisses that claim: Andreasik does not allege that she reported any suspected illegal activities to any authority identified in the IWA, as is required to state a claim. *See* 740 ILCS 174/15.

Section 20 of the IWA, on the other hand, provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act." 740 ILCS 174/20. Illinois courts interpret the term "refusal" strictly, as "not every refusal qualifies for protection under the Act." *Sardiga v. N. Tr. Co.*, 409 Ill. App. 3d 56, 62, 948 N.E.2d 652, 657 (Ill. App. 1 Dist. 2011). Thus, the term "refusal" does not mean "complaining" about or "questioning" suspected illegal activity. *Id.* Under Section 20 of the Act, "the plaintiff must actually refuse to participate" in an activity that would result in a legal or regulatory violation. *Id.*

Defendants argue that Andreasik fails to allege that she actually refused to participate in fraudulent activities. They contend that Andreasik alleges only that she complained about and proposed changes to such activities. Defendants point to numerous allegations in which Andreasik merely "raised concerns," "repeatedly complained," or "objected to" supposedly fraudulent billing practices. (*See, e.g.*, Dkt. 14 at ¶¶ 20, 78, 82.) In response, Andreasik argues that she adequately pled that she tried to fix fraudulent billing practices but was "blocked" from doing so, and that she "repeatedly *refused to engage in unlawful conduct* when she objected to and created processes to eliminate Defendant's negligent and fraudulent billing practices." (Dkt. 23 at 6 (emphasis added in brief).)

Although Andreasik emphasizes the language "refused to engage," the core of that allegation is that she "objected to and created processes to eliminate Defendant's negligent and fraudulent billing practices." She does not allege that she "actually refused" to participate in fraudulent billing

7

practices, nor that she "deni[ed] or reject[ed] [anything] offered or demanded," *Sardiga*, 948 N.E.2d at 657, as is required to state a claim. *See also Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 670 (7th Cir. 2008) (plaintiff did not refuse to participate in illegal activity because "he was never invited to" engage in it); *Guminski v. Massac Cnty. Hosp. Dist.*, 2015 WL 350669, at *1 (S.D. Ill. Jan. 27, 2015) (Gilbert, J.) (plaintiff did not state a claim under the Act because there was "no indication within the Complaint that the Plaintiff, at any point, was asked to participate in creating the falsified records"); *Montoya v. Atkore Int'l, Inc.*, 2018 WL 5013565, at *4 (N.D. Ill. Oct. 16, 2018) (Ellis, J.).

The two cases cited by Andreasik are distinguishable. In *Spratt v. Bellwood Pub. Library*, 380 F. Supp. 3d 783 (N.D. Ill. 2019) (Coleman, J.), this Court held that the library-director plaintiff adequately pled a claim under Section 20 where she "refused to issue payment on invoices from" two law firms "which both had been retained without lawful votes from the [library's] Board [of Trustees]." *Id.* at 786, 790. Unlike the plaintiff in *Spratt*, who refused to respond to an invoice because she believed the legal work and resulting invoice was unlawful, Andreasik does not allege that she refused any action at all. Rather, she alleges only that she complained and proposed a new course of action.

In *U.S. ex rel. Kennedy v. Aventis Pharms., Inc.*, No. 03 C 2750, 2008 WL 4371323 (N.D. Ill. Feb. 11, 2008) (Kennelly, J.), although the plaintiff did not "plead with particularity exactly what illegal conduct she refused to participate in," the plaintiff stated a claim under Section 20 by alleging "Defendant Aventis retaliated against [plaintiff] for refusing to participate in activities that would result in a violation of State or Federal laws, rules, or regulations." *Id.* at *5. It is unclear, and unnecessary to this decision, whether the *Aventis* plaintiff's claim would have survived post-*Iqbal*. *See Iqbal*, 556 U.S. at 678 (explaining, after *Aventis* was decided, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.). Regardless, unlike *Aventis*, the Court is not left to infer in Andreasik's case

8

whether facts supporting a vague allegation could develop in discovery. Andreasik alleges only that her supposed "refusal" was her objection to HG's financial practices and her creation of new proposed policies.

Andreasik therefore fails to state a claim under Section 20 of the IWA. The Court dismisses Count IX.

### 4. Retaliatory Discharge (Count VIII)

The tort of "retaliatory discharge" is an exception to Illinois's "general rule that 'at-will' employment is terminable at any time for any or no cause." *Blount v. Stroud*, 232 Ill. 2d 302, 314, 904 N.E.2d 1, 9 (Ill. 2009) (quoting *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 128, 52 Ill.Dec. 13, 421 N.E.2d 876 (Ill. 1981)). To establish a claim under this theory, Andreasik must show that she was discharged in retaliation for engaging in activities protected by a clear mandate of public policy. *Bajalo v. Northwestern University*, 369 Ill. App. 3d 576, 580, 860 N.E.2d 556 (2006). There is no precise definition of "clearly mandated public policy," but Illinois case law provides two clear examples: "where an employee is discharged for filing, or in anticipation of filing, a claim under the Workers' Compensation Act … or where an employee is discharged in retaliation for the reporting of illegal or improper conduct, otherwise known as 'whistleblowing.'" *Michael v. Precision All. Grp., LLC*, 2014 IL 117376, ¶ 30, 21 N.E.3d 1183, 1188 (Ill. 2014) (internal citations omitted).[1]

The parties dispute the holdings in *Riedlinger v. Hudson Respiratory Care, Inc.*, 478 F. Supp. 2d 1051 (N.D. Ill. 2007) (Norgle, J.). But *Riedlinger* is inapplicable to the specific analysis of Andreasik's retaliatory discharge claim because it addressed retaliatory discharge based on conduct covered by Section 15 of the IWA. *Compare Riedlinger*, 478 F. Supp. 2d at 1055 (N.D. Ill. 2007) (interpreting "Illinois law to provide that an employee has a cause of action for retaliatory discharge in Illinois

---

[1] Defendants do "not claim that Andreasik's retaliatory discharge claim is preempted by the Illinois Whistleblower Act," Dkt. 25 at 6, and neither does Andreasik, Dkt. 25 at 7-8. Thus, although the case law appears to be unsettled on this issue, *see id.*, the Court need not address it here.

only if he or she has revealed information he or she reasonably believes discloses a violation of a law or regulation to some government or law enforcement agency"), *with* 740 ILCS 174/15. In contrast, other courts in this district have explained that "the tort [of retaliatory discharge] does not necessarily cover situations where an employee is fired for refusing to take unlawful activity— protection that the statute affords." *Stiles v. Int'l BioResources, LLC*, 726 F. Supp. 2d 944, 951 (N.D. Ill. 2010) (Dow, J.) (comparing *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 568 N.E.2d 870, 867 (1991) (no retaliatory discharge action by employee dismissed for not taking unlawful actions requested by mayor), with 740 ILCS 174/20).

The parties do not address this distinction. Even if the tort of retaliatory discharge covered refusals to take unlawful action, however, Andreasik has failed to plead a refusal for the reasons described above. Common law retaliatory discharge claims are "not tied to [Illinois Whistleblower Act] claim[s] as a matter of law." *Perez v. Staples Cont. & Com. LLC*, No. 16-CV-7481, 2020 WL 6448296, at *12 (N.D. Ill. Nov. 3, 2020) (Dow, J.). But a failure to plead that a plaintiff engaged in conduct protected by the IWA can be fatal to a plaintiff's retaliatory discharge case. *See, e.g.*, *id.* at 11–12; *Sweeney v. City of Decatur*, 2017 IL App (4th) 160492, ¶ 25, 79 N.E.3d 184, 190–91 (Ill. App. 4 Dist. 2017) ("like with his claim under the Whistleblower Act, plaintiff has failed to plead facts supporting an instance of whistleblowing and cannot plead a violation of a clear mandate of public policy based on whistleblowing"). That is the case here. Andreasik has failed to allege that she reported to a government agency or refused to participate in any suspected illegal activities. She therefore fails to state a claim for retaliatory discharge, and the Court dismisses Count VIII.

5. **IIED (Count X)**

To prove IIED under Illinois Law, a plaintiff must establish that "(1) the defendant's conduct was truly extreme and outrageous; (2) the defendant intended to inflict severe emotional distress (or knew that there was at least a high probability that its conduct would cause severe

emotional distress); and (3) the defendant's conduct did in fact cause severe emotional distress." *Richards v. United States Steel*, 869 F.3d 557, 566 (7th Cir. 2017) (citing *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 80, 278 Ill. Dec. 228 (Ill. 2003)). "Outrageous conduct" is conduct that goes beyond "all possible bounds of decency and [would be] regarded as intolerable in a civilized society." *Id.* "[I]nsults, indignities, threats, annoyances, petty oppressions" are insufficient to state a cause of action. *Id.* at 567. The bar for IIED is higher in the employment context: "[A]n employee must show that an employer 'clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment.'" *Trahanas v. Northwestern University*, 64 F.4th 842, 860 (7th Cir. 2023) (citing *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006)).

Defendants argue first that Andreasik has failed to allege any outrageous conduct that could support an IIED claim. Andreasik clarifies that the basis for her IIED claims is Bartosh's response to her arthritis—specifically, that Bartosh "went out of her way to schedule early meetings" and terminated Andreasik "less than one month after [Andreasik] told Bartosh that she was undergoing [arthritis] treatment" with significant side effects. (Dkt. 23 at 9.) Defendants respond that Andreasik has alleged nothing more than workplace friction and a personality clash between Andreasik and Bartosh, neither of which meets the high bar for workplace IIED. The Court agrees.

Generally, "Illinois courts have been hesitant to find intentional infliction of emotional distress in the workplace because, 'if everyday job stresses resulting from discipline, personality conflicts, job transfers or even terminations could give rise to a cause of action for intentional infliction of emotional distress, nearly every employee would have a cause of action.'" *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006) (quoting *Graham v. Commonwealth Edison Co.*, 742 N.E.2d 858, 867 (Ill. 2000). Andreasik alleges a poor working environment, but that alone is insufficient to state an IIED claim. Although Bartosh's decision to schedule early morning meetings

11

is distasteful if true, it is a "petty oppression" rather than a clear abuse of power "far more severe" than usual workplace stress.

Andreasik's alleged termination for her medical condition is also insufficient to support an IIED claim. "Illinois courts have held that even a wrongful discharge based on a prohibited category … 'is not sufficiently outrageous or extreme to sustain a claim of intentional infliction of emotional distress.'" *Bogie v. PAWS Chicago*, 914 F. Supp. 2d 913, 917 (N.D. Ill. 2012) (Holderman, J.) (collecting cases). And although Bartosh's decision to terminate Andreasik during difficult medical treatment could be considered insensitive on its own, it does not rise to the level of IIED.

The Court therefore dismisses Count X of Andreasik's complaint.

**CONCLUSION**

For these reasons, the Court grants Defendants' motion [20] and dismisses (1) Counts I–IX against Bartosh with prejudice; (2) Count X against Bartosh without prejudice; and (3) Counts I–X against HG without prejudice. Andreasik is granted leave to amend her complaint within 30 days if she believes in good faith that she can cure the deficiencies identified in this opinion.

**IT IS SO ORDERED.**

Date: 3/15/2024

Entered:

SHARON JOHNSON COLEMAN
United States District Judge